**DONALD F. BURKE, ESQ.**
**One PATH Plaza**
**Jersey City, New Jersey 07306**
**(201) 216-6370**
**Attorney for Defendants**
**DETECTIVE JOSEPH STITZ, JR.**
**and DETECTIVE  JUAN GARCIA**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**DOCUMENT ELECTRONICALLY FILED**

| | |
|---|---|
| **VINCENT CAMPANELLO,** | **Civil Action No: 07-4929 (GEB)** |
| **Plaintiff,** | |
| **v.** | |
| | **Honorable Garrett E. Brown, U.S.D.J.** |
| **PORT AUTHORITY OF NEW YORK AND NEW JERSEY, JOSEPH STITZ, JR., JUAN GARCIA, CAROLINE S. HAYNES, GEORGE BROADBEND, PAUL CHRIST, JOHN DOES (#1-5) (fictitious designations) and JANE DOES (#1-5) (fictitious designations),** | **Honorable Madeline Cox-Arleo, U.S.M.J.** |
| **Defendants.** | |

**BRIEF IN SUPPORT OF DEFENDANTS DETECTIVE**
**JOSEPH STITZ, JR.  and DETECTIVE JUAN GARCIA'S**
**MOTION FOR SUMMARY JUDGMENT**

**DONALD F. BURKE, ESQ.**
**One PATH Plaza**
**Jersey City, New Jersey 07306**
**(201) 216-6370**
**Attorney for Defendants**
**DETECTIVE JOSEPH STITZ, JR.**
**and DETECTIVE  JUAN GARCIA**

## TABLE OF CONTENTS

PROCEDURAL HISTORY ...................................................................................1

STATEMENT OF FACTS ..................................................................................1

LEGAL ARGUMENT .........................................................................................6

POINT I ................................................................................................................6

SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS DETECTIVE JOSEPH
STITZ, JR. AND DETECTIVE JUAN GARCIA IS REQUIRED BECAUSE PLAINTIFF
CANNOT DEMONSTRATE GENUINE ISSUES OF MATERIAL FACT REGARDING
THE REMAINING CAUSE OF ACTION FOR MALICIOUS PROSECTION ...................6

    **1.** Standard of Review ................................................................................6

    **2.** Elements of a Cause of Action For Malicious Prosecution ................................7

        **a)** Plaintiff Cannot Establish A Lack Of Probable Cause....................................8

        **b)** Plaintiff Cannot Establish That Defendants Acted With Malice ................10

        **c)** Plaintiff Was Not Deprived of a Liberty Interest in Relation to the
        Hudson County Charges ........................................................................11

POINT II .............................................................................................................12

DEFENDANTS DETECTIVE JOSEPH STITZ, JR. AND DETECTIVE JUAN GARCIA
ARE ENTITLED TO QUALIFIED IMMUNITY .................................................................12

CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

## CASES

Albright v. Oliver, 510 U.S. 266 (1994) ..................................................................11

Anderson v. Creighton, 483 U.S. 635 (1987) ......................................................12, 14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ...........................................6

Campione v. Adamar of New Jersey, 302 N.J. Super. 99 (App. Div. 1997) ....................8

Carollo v. Supermarkets General, 251 N.J. Super. 264 (App. Div. 1991)..........................9

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................................6

Curley v. Klem, 499 F.3d 199 (3d Cir.2007)...................................................................13

Deary v. Three Un-Named Police Officers, 746 F.2d 185 (3d Cir.1984)....................................14

Earl v. Winne, 14 N.J. 119 (1953) ......................................................................10

Estate of Smith v. Marasco, 318 F.3d 497 (2003) ...........................................14

Geyer v. Faiella, 279 N.J. Super. 386 (App. Div.) certif.denied, 141 N.J. 95 (1995)......................7

Gilles v. Davis, 427 F.3d 197 (3d Cir. Pa. 2005)..................................................14, 15

Harlow v. Fitzgerald, 457 U.S. 800 (1982)............................................................12

Hunter v. Bryant, 502 U.S. 224 (1991)................................................................13

Johnson v. Knorr, 477 F.3d 75 (3d Cir.2007) ......................................................7

Lind v. Schmid, 67 N.J. 255 (1975)...............................................................7, 8, 9, 10

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .........................7

Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139 (Ch. Div. 1951), aff'd, 9 N.J. 605 (1952)

Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (3d Cir.2000) ................................11

Michigan v. DeFillippo, 443 U.S. 31 (1979) ......................................................14

Mitchell v. Forsyth, 472 U.S. 511 (1985)............................................................12

Montgomery v. De Simone, 159 F.3d 120 (3d Cir.1998)................................................................15

Paul v. National Educ. Ass'n., 195 N.J. Super. 426 (App. Div. 1984)................................................8

Pearson v. Callahan, 129 S.Ct. 808 (2009)..............................................................................13

Piper v. Scher, 221 N.J. Super. 54 (App. Div. 1987)................................................................8, 10

Procunier v. Navarette, 434 U.S. 555 (1978)..............................................................................12

Rubin v. Nowak, 248 N.J. Super. 80 (App. Div. 1991)..............................................................13, 14

Saucier v. Katz, 533 U.S. 194 (2001)......................................................................................13

Sharrar v. Felsing, 128 F.3d 810 (3d Cir.1997)..........................................................................14

Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir.1997).......................................................................8

Shoemaker v. Shoemaker, 11 N.J. Super. 471 (App. Div. 1951).........................................................10

State v. Summers, 197 N.J. Super. 510, 517 (Law Div. 1984)............................................................8

The Penwag Property Co. v. Landau, 76 N.J. 595 (1978)..................................................................8

Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir.1998).................................................................11

Turner v. Wong, 363 N.J. Super. 186 (App. Div. 2003)....................................................................7

Vickey v. Nessler, 230 N.J. Super. 141 (App. Div.), certif. denied, 117 N.J. 74 (1989)................7

Williams v. Page, 160 N.J. Super. 354 (App. Div. 1978)..................................................................8

Wilson v. Russo, 212 F.3d 781 (3d Cir.2000) ..............................................................................14

Wright v. City of Phila., 409 F.3d 595 (3d Cir.2005)....................................................................14

## STATUTES

42 U.S.C. §1983...................................................................................................................12

N.J.S.A. 2C:20-3(a)......................................................................................................9, 10, 20

N.J.S.A. 2C:20-6 ..................................................................................................................9

**<u>RULES</u>**

Fed.R.Civ.P.56(c) ...............................................................................................................6

Fed.R.Civ.P. 56(e) .............................................................................................................6

**<u>OTHER SOURCES</u>**

<u>Restatement Torts,</u> §673 (1977).......................................................................................8

## PROCEDURAL HISTORY

Plaintiff, Vincent Campanello, commenced this action with the filing of a Complaint in Superior Court of New Jersey, Law Division–Essex County on August 23, 2007 against the Defendants, Port Authority of New York and New Jersey ("Port Authority"), Port Authority Police Detective Joseph Stitz, Jr., Port Authority Police Detective Juan Garcia, Caroline S. Haynes, George Broadbent and Paul Crist. **(SMF, par. 3)**. Defendant, Port Authority, filed a Notice of Removal with a Verified Petition of Removal with the Clerk of the United States District Court for the District of New Jersey on October 11, 2007. This Court's jurisdiction is based upon the Plaintiff's claim that his constitutional rights were violated, 28 U.S.C. § 1441(a) and diversity of citizenship, 28 U.S.C. §1332(a).

On December 19, 2008, the Court granted defendant's Rule 12(b)(6)motion and dismissed all claims asserted by plaintiff except for the claim of malicious prosecution in connection with the criminal charges that had been dismissed by the Jersey City Municipal Court on February 1, 2007. (See, Court Opinion dated 12/19/08, Document 28, page 11.)

## STATEMENT OF FACTS

On or about January, 1998, Plaintiff was hired by General Research, a Division of Artenyro, Inc., a staffing company located in Teaneck, New Jersey. **(SMF, par. 4)**. Thereafter, as a result of the efforts of General Research, Plaintiff was hired as a contract employee by Defendant, Port Authority of New York and New Jersey (hereinafter "Port Authority"). **(SMF, par. 5).** Upon becoming employed by Port Authority, the Plaintiff was originally assigned to the Maintenance Engineering Design Division ("MEDD").  Subsequently, he was assigned to the Tunnels Bridges and Terminals ("TB&T") Division. **(SMF, par. 6).** The Plaintiff continued to

work as a contract employee in the TB&T Division reporting directly to Defendant Paul Crist.

**(SMF, par. 6).**

In or about January of 2005, Plaintiff's wife called the Port Authority to report that plaintiff had possession of Port Authority property. She testified:

> Q.   At some point you called the Port Authority to report Port Authority property in the possession of your husband. Correct?
> A.   Yes, I did.
> Q.   And when was that?
> A.   Sometime in November, December.
> Q.   Well --
> A.   Or right after. It was within that time.
> Q.   January 2005 or so?
> A.   Okay. That's agreeable.

<u>See</u> Transcript of Deposition of Dianna Mazzanna Campanello 8-21 to 9-6, **(SMF, par. 7).**

> A.   And she said, okay, fine. Took my number and my name and said someone would be contacting you.
> Q.   Okay. Did someone?
> A.   Yes, a Detective Garcia.
> Q.   And tell me about that.
> A.   He called and we spoke for a few minutes, exactly what I told you, that I think I may have some things, that I just you know, wanted to call and let them know.

**(SMF, par. 7).**

On or about January 18, 2005, Plaintiff was interviewed by Defendants, Joseph Stitz, Jr., and Juan Garcia, Detectives with the Port Authority Police Department. **(SMF, par. 8).** The Plaintiff provided a voluntary statement that was recorded and retained by Stitz and Garcia. **(SMF, par. 8).** During the interview, Plaintiff admitted to taking Port Authority property and storing it in his garage.

> P.Q.   The property that you had in your garage ah did that belong to you or did that belong to the Port Authority?
> V.C.   More so them than me I would imagine.
> P.Q.   I'm sorry?

V.C. I guess it belonged to the P.A.

P.Q. Belonged to the Port Authority, okay, and did anybody ah expressly give you authority to take that property, from the worksite to your home?

V.C. (silence)

P.Q. Okay.

V.C. I just thought it was for safekeeping because I wasn't selling it (inaudible).

P.Q. Okay, I have no more questions.

D.S. No more question.

J.G. Vincent, just one last thing.

D.S. Certainly.

J.G. Is this common practice for a lot of employees that work at the Port Authority or general contractors for the Port Authority?

**V.C.** **I know people that have stuff, I see people wearing these clothes that maybe are not authorized to do that, I'm not going to mention any names (inaudible).**

J.G. Has anyone mentioned that they have this much quantity as you do?

**V.C.** **I didn't know I had this much quantity.  I'll be honest with you, when you started piling it all up in my living room, I was embarrassed of myself, I actually embarrassed myself.**

**(SMF, par. 7)**

  The underlying facts surrounding the Plaintiff's arrest and subsequent filing of criminal complaints against him in Hudson County are not in dispute. As noted above, on January 14, 2005, the Plaintiff admitted that he was in possession of property belonging to the Port Authority. He voluntarily gave Detective Stitz and Detective Garcia permission to search his house and garage.  Upon searching the Plaintiff's premises, Detective Stitz and Detective Garcia identified over 500 items of Port Authority property including: 27 flags, 19 goggles, 18 flashlights, 21 police patches, 25 reflective door decals, 18 police collar brass pins, 8 police batons, 20 Port Authority coats, 38 pairs of gloves, 10 Port Authority T-shirts and 10 grey duffel bags with logos.

A laptop computer belonging to the Port Authority was also found on the premises.  The value of these items was estimated at $6,631.23.  When asked about these items, the Plaintiff admitted to removing them from Port Authority facilities from September 2001 to 2003.  **(SMF, par. 9).**

Because the items were taken from the Port Authority stockroom in Jersey City, a Criminal Complaint was filed by Detective Garcia in Hudson County charging Plaintiff with a violation of <u>N.J.S.A.</u> 2C:20-3(a). This statute provides:

> **N.J.S.A. 2C:20-3. Theft by unlawful taking or disposition**
> **a. Movable property.** A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof.

**(SMF, par. 9).**

The plaintiff does not dispute he was in possession of Port Authority property. He testified at deposition:

> Q.     And you don't dispute that you had the Port Authority property in your home, do you?
> A.     No. It was there.

**(SMF, par. 10).**

> Q.     So let's go talk about Stitz and Garcia. Okay? You sued them personally as well in this case. Do you understand that?
> A.     Yes, I do.
> Q.     Okay. Now, as far as you've explained to me, Stitz got a call that indicated that there was Port Authority property at your Bricktown home. Correct?
> A.     Yes.
> Q.     You admitted that you had Port Authority property in your Bricktown home?
> A.     Yes.
> Q.     Now, at the time when Stitz seized the property -- or gets the call, seized the property in your home, how long had some of that property been in your home?
> A.     Maybe a year or so.
> Q.     Okay. Some more than a year?
> A.     Yeah.

**(SMF, par. 10).**

The Hudson County Prosecutor downgraded the theft charges to a disorderly persons offense and transferred the matter to the Jersey City Municipal Court.  On February 1, 2007, the matter was called for trial before the Jersey City Municipal Court and the Jersey City Municipal Prosecutor agreed to a dismissal of the charges. **(SMF, par. 11).** This lawsuit followed.

As the below Legal Argument demonstrates, Summary Judgment in favor of defendants Detective Stitz and Detective Garcia is appropriate because plaintiff is unable, given the undisputed facts, to establish the elements necessary to prove a Section 1983 claim of malicious prosecution for three reasons. See infra Point I. First, Plaintiff cannot prove the lack of probable cause for the charges, an essential element of a malicious prosecution action. Id.  Second, he cannot prove that defendants acted with malice in charging him. Id.  Third, he was not deprived of a liberty interest in connection with the charges. Id.  Plaintiff's inability to prove any of these essential elements alone is fatal to his malicious prosecution claim.  Further, given the undisputed facts, Detective Stitz and Detective Garcia are entitled to Qualified Immunity because a reasonable officer could have believed that probable cause existed to arrest plaintiff. See infra Point II.

**LEGAL ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS DETECTIVE JOSEPH STITZ, JR. AND DETECTIVE JUAN GARCIA IS REQUIRED BECAUSE PLAINTIFF CANNOT DEMONSTRATE GENUINE ISSUES OF MATERIAL FACT REGARDING THE REMAINING CAUSE OF ACTION FOR MALICIOUS PROSECTION**

**1.      Standard of Review**

Pursuant to Rule 56(c), Fed.R.Civ.P., Summary Judgment is appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  The Supreme Court has held that Summary Judgment must be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Only disputes over facts that might influence the outcome of the suit under the governing law will properly preclude the entry of Summary Judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the initial burden of establishing there is no genuine issue of material fact.  A material question of fact is a question which will be outcome determinative of an issue in the case.  The Supreme Court has instructed that the material facts in a specific case shall be determined by the substantive law controlling the given case or issue.  Id. at 248.  Once the moving party has met their burden, the opposing party must go beyond the pleadings and set forth specific facts in affidavits or otherwise show that there is a genuine issue of material fact.  See Celotex, supra at 321-327.

Rule 56(e), Fed.R.Civ.P., provides that a party opposing a properly supported motion for Summary Judgment "may not rest upon the mere allegations or denials of [his] pleading, but …

6

must set forth specific facts showing that there is a genuine issue for trial."  In order for a plaintiff to avoid Summary Judgment, there must be sufficient evidence from which a fact-finder could find for the plaintiff.  See Anderson, supra 477 U.S. at 249.  While a mere scintilla of evidence is insufficient, the Court must construe the evidence and draw all interferences in a light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2.    **Elements of a Cause of Action For Malicious Prosecution**

In order to state a claim for malicious prosecution as a constitutional violation, a plaintiff must establish: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007). A claim for malicious prosecution arising out of a criminal proceeding requires proof that: the criminal action was instituted by the defendant against the plaintiff; it was actuated by malice; there was the absence of probable cause for the proceeding; and it was terminated favorably to the plaintiff. See Turner v. Wong, 363 N.J. Super. 186, 203 (App. Div. 2003), quoting Lind v. Schmid, 67 N.J. 255, 262 (1975); See also Geyer v. Faiella, 279 N.J. Super. 386, 394 (App. Div.), certif. denied, 141 N.J. 95 (1995). However, when the underlying proceeding involves none of the physical constraints ordinarily attendant to the criminal process, the cause of action is known as malicious use of process and requires proof of a deprivation of liberty or "other special grievance." Vickey v. Nessler, 230 N.J. Super. 141, 146 (App. Div.), certif. denied, 117 N.J. 74 (1989).

It is well settled that malicious prosecution actions are subject to judicial disfavor because such actions inhibit parties from seeking relief in the Courts.  See, e.g., Lind v. Schmid, 67 N.J. 255, 262 (1975); Piper v. Scher, 221 N.J. Super. 54, 58 (App. Div. 1987); Shoemaker v. Shoemaker, 11 N.J. Super. 471 (App. Div. 1951).  As noted in Penwag Property Co. v. Landau, 76 N.J. 595, 598 (1978), "[c]ourts must be readily accessible to the people.  Extreme care must be exercised so as to avoid any obstacle or reluctance on their part to seek redress for criminal or civil wrongs for fear of being subject to a damage suit, if action results adversely." See also Mayflower Indus. v. Thor Corp., 15 N.J. Super. 139, 153 (Ch. Div. 1951), aff'd, 9 N.J. 605 (1952).  The Court in Lind, stated, "malicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime".  Lind, supra, 67 N.J. at 262.

This judicial disfavor has lead to a particularly onerous burden on a party bringing an action for malicious prosecution.

**a. Plaintiff Cannot Establish A Lack Of Probable Cause**

The Supreme Court has made it clear that "[t]he essence of a [malicious prosecution] action is lack of probable cause, and the burden of proof rests on the plaintiff.  The plaintiff must establish a negative, namely, that probable cause did not exist."  Lind, supra, 67 N.J. at 262-63.  "[T]he existence or non-existence of probable cause is a question of law." Id. at 266; See also Campione v. Adamar of New Jersey, 302 N.J. Super. 99, 122 (App. Div. 1997); Paul v. National Educ. Ass'n., 195 N.J. Super. 426, 429 (App. Div. 1984); Williams v. Page, 160 N.J. Super. 354, 364 (App. Div. 1978); Restatement Torts, §673 at 443 (1977); "[T]he probable cause which will defeat a malicious prosecution action must ... be objectively evaluated.  Thus, the question which determines the existence of probable cause in this context is '[w]as the state of facts such as to lead a person of

ordinary prudence to believe on reasonable grounds the truth of the charge at the time it was made.'"

Carollo v. Supermarkets General, 251 N.J. Super. 264, 270 (App. Div. 1991), quoting Lind, supra, 67 N.J. at 263.   Accordingly, the burden is on the plaintiff to prove the lack of probable cause. Plaintiff must produce evidence to create a genuine issue of material fact that a person of ordinary prudence, when presented with the facts, could not reasonably believe that there was probable cause for issuing summons charging a violation of N.J.S.A. 2C:20-3(a) and N.J.S.A. 2C:20-6.   In this case, plaintiff was in unauthorized possession of Port Authority property.   Thus, there was ample probable cause to believe plaintiff violated N.J.S.A. 2C:20-3(a), which provides: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof."

> Q.    You admitted that you had Port Authority property in your
>        Bricktown home?
> A.    Yes.
> Q.    Now, at the time when Stitz seized the property -- or gets the
>        call, seized the property in your home, how long had some
>        of that property been in your home?
> A.    Maybe a year or so.
> Q.    Okay. Some more than a year?
> A.    Yeah.

**(SMF, par. 10)**.

Mr. Campanello also admitted:

> Q.    And while it was in your Bricktown home, you did exercise
>        control over all the Port Authority property.  Correct?
> A.    Define "control."
> Q.    Well, it was in your home?
> A.    Yeah.
> Q.    And you had possession of it, yes?
> A.    Yeah.
> Q.    And all those facts were known by Garcia and Stitz at the
>        time when they charged you. Correct?
> A.    I'm going to say yeah.
> Q.    And all those facts are undisputed as far as you're
>        concerned.  Correct?

| A. | That they were issued from the stockroom and transported to Bricktown, those facts? |
|----|-----|
| Q. | Yeah. |
| A. | Yes. |
| Q. | And that you had possession and control in your home in Bricktown of those items? |
| A. | Yes. |

**(SMF, par. 12)**.

The undisputed facts available to Detective Stitz and Detective Garcia establish Plaintiff 1) unlawfully took, or exercised unlawful control over, 2) movable property of another for 3) more than one year and the detectives clearly had probable cause to believe Plaintiff violated N.J.S.A. 2C:20-3(a). See State v. Summers, 197 N.J. Super. 510, 517 (Law Div. 1984) (Referencing the inference that one in possession of stolen property for more than one year acted with a "purpose to deprive" the owner permanently). Certainly, under these facts Plaintiff cannot prove the lack of probable cause, which defeats his malicious prosecution claim.

#### b. Plaintiff Cannot Establish That Defendants Acted With Malice

Further, a lack of malice is fatal to Plaintiff's cause of action here because a plaintiff bears the burden of demonstrating that, defendants were "motivated by malice." Lind, supra, 67 N.J. at 262-63; See also Rubin v. Nowak, 248 N.J. Super. 80 (App. Div. 1991); Piper v. Scher, 221 N.J. Super. 54 (App. Div. 1987). Probable cause is an element of the tort of malicious prosecution that is separate and distinct from malicious intent and both elements have to be met. In fact, the Supreme Court stated in Earl v. Winne, 14 N.J. 119, 134 (1953), "[t]he essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complainant was actuated by a malicious motive in making the charge."

In this case there is no proof that either Detective Stitz or Detective Garcia even knew the Plaintiff before it was reported by his wife that he was in possession of Port Authority property

10

much less that his arrest was actuated with malice and the case must be dismissed on this ground as well.

### c. Plaintiff Was Not Deprived of a Liberty Interest in Relation to the Hudson County Charges

In the wake of the Supreme Court's holding in <u>Albright v. Oliver</u>, 510 <u>U.S.</u> 266 (1994),[1] the Third Circuit Court of Appeals has unequivocally stated that a claim of malicious prosecution may be based on a liberty interest protected by the Fourth Amendment or some other provision of the constitution, provided it is not based on the substantive component of the Due Process Clause. <u>See</u>, <u>e.g.</u>, <u>Merkle v. Upper Dublin Sch. Dist.</u>, 211 <u>F.3d</u> 782, 792 (3d Cir.2000); <u>Torres v. McLaughlin</u>, 163 <u>F.3d</u> 169, 173 (3d Cir. 1998). Thus, a plaintiff in a malicious prosecution action brought under Section 1983 must establish a seizure or other such Fourth Amendment violation. Given the following testimony, Plaintiff cannot establish a deprivation of liberty with regard to the Hudson County charges:

> MR. CASALE; Tell him what happened in Jersey City. Start with one and go to the other one.
> A.    I think they called me in. They called me in, and I believe Stitz said, we have to re-arrest you or reprocess you because of the second set of charges. So we went through the whole blueprint thing and all the rest of that stuff.
> Q.    What do you mean?
> A.    Well, fingerprint stuff. I'm sorry.
> Q.    Okay.
> A.    And I don't think I -- **<u>I wasn't held. I was released on my own recognizance</u>**. Then we went through another set of court appearances. And I think it was an instant replay on the other ones based upon the dates that are in these documents.
> Q.    <u>So basically you came to this building, went downstairs, and he provided you with the forms there?</u>
> A.    <u>Yes, I would imagine, yes.</u>
> Q.    <u>And you weren't kept?</u>
> A.    <u>No.</u>

---

[1] Holding that the substantive component of the Due Process Clause of the Fourteenth Amendment provides no relief for one who claims he has been prosecuted without probable cause; "express[ing] no view" on whether such relief would be available under other amendments.

**(SMF, par. 11)**.

In light of the above, Plaintiff was not deprived of a liberty interest protected by the Fourth Amendment.

Plaintiff's proofs, therefore, fall well short of establishing a Section 1983 claim of malicious prosecution and summary judgment in favor of defendants is appropriate.

## POINT II

### DEFENDANTS DETECTIVE JOSEPH STITZ, JR. AND DETECTIVE JUAN GARCIA ARE ENTITLED TO QUALIFIED IMMUNITY

Government officials may claim the defense of qualified immunity to suits filed pursuant to 42 U.S.C. §1983. See e.g., Procunier v. Navarette, 434 U.S. 555, 561-62 (1978). Qualified immunity for a federal civil rights violation balances the interest of the plaintiff in obtaining a remedy for civil rights violations with the public's interest in the vigorous exercise by public officials of duly-imposed public power.  See Harlow v. Fitzgerald, 457 U.S. 800 (1982).  The immunity accommodates these competing interests by affording a zone within which government officials are not liable for damages when they act pursuant to official authority in a reasonable, but mistaken manner.  See Anderson v. Creighton, 483 U.S. 635 (1987).  Because the immunity seeks to encourage the vigorous exercise of public power in the public interest, the immunity is an immunity from suit, as well as defense to liability from damages.  See Mitchell v. Forsyth, 472 U.S. 511 (1985). The United States Supreme Court recently reiterated:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and

12

> the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Groh v. Ramirez, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (citing Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (noting that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

Pearson v. Callahan, 129 S.Ct.808, 817 (2009).

Qualified immunity strikes a balance between absolute immunity and no immunity by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or ... knowingly violate[d] the law", while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007).  A mistake is not reasonable when it amounts to the violation of a "clearly established" right, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Curley, supra 499 F.3d at 207.  While under Saucier v. Katz, 533 U.S. 194 (2001), whether a right was clearly established was assessed only if the plaintiff had adequately alleged a constitutional violation in the first place, the Supreme Court adopted a more flexible approach in Pearson, which permits either prong to be assessed first. See Pearson v. Callahan, 129 S.Ct. 808, 817 (2009).

In the probable cause context, a police officer is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed to arrest [Plaintiff]." Hunter v. Bryant, 502 U.S. 224, 228 (1991). Probable cause exists when, based on the factual circumstances, a prudent person could believe that a particular suspect has committed or is committing an offense.  See Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997). The Court must determine whether it would be clear to a reasonable officer that his conduct was unlawful

under the circumstances of the case.  See Saucier, supra, 533 U.S. at 202. "[A] district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." Estate of Smith v. Marasco, 318 F.3d 497, 514 (2003) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

Detective Stitz and Detective Garcia are "entitled to qualified immunity unless it would have been clear to a reasonable officer there was no probable cause to arrest" Mr. Campanello. Gilles v. Davis, 427 F.3d 197, 205 (3d Cir. 2005). The Supreme Court has recognized that "it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present." Anderson v. Creighton, 483 U.S. 635, 641 (1987).

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).  It "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005).  In fact, "it is irrelevant to the probable cause analysis ... whether a person is later acquitted of the crime for which she or he was arrested." Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)). Finally, the issue of whether there was probable cause to make an arrest is usually a question for the jury, but "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." Deary v. Three Un-Named Police Officers, 746 F.2d 185, 192 (3d Cir. 1984); see also Wilson, supra, at 786. Thus, summary judgment on a malicious prosecution claim is "appropriate if taking all of [the plaintiff's] allegations as true and resolving all inferences

in her favor, a reasonable jury could not find a lack of probable cause for ... [the] arrest." Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).

To determine whether a police officer was objectively reasonable in believing he had probable cause to make an arrest, courts begin with the elements of the crime alleged. Gilles v. Davis, 427 F.3d 197, 204 (3d Cir. Pa. 2005). The charge at issue here is N.J.S.A. 2C:20-3. Theft by unlawful taking or disposition, a. Movable property, which states: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof."

The facts discussed above in context of the probable cause analysis and the documents marked at plaintiff's deposition as Exhibits D-E and D-F provide more than enough proof to establish qualified immunity for Detective Stitz and Detective Garcia and Summary Judgment should be entered in their favor.

## <u>CONCLUSION</u>

For each of the foregoing reasons, defendant Detective Joseph Stitz, Jr. and Detective Juan Garcia respectfully request that the Court grant their motion for Summary Judgment as to plaintiff's sole remaining claim of malicious prosecution as to the Hudson County charges.

Respectfully Submitted,

**DONALD F. BURKE, ESQ.**
**One PATH Plaza**
**Jersey City, New Jersey 07306**
**(201) 216-6370**
**Attorney for Defendants**
**DETECTIVE JOSEPH STITZ, JR. and**
**DETECTIVE  JUAN GARCIA**

By: <u>/s/ Donald F. Burke</u>
        Donald F. Burke

Dated: June 25, 2010

16