UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Document Electronically Filed

| | |
|---|---|
| VINCENT CAMPANELLO,<br><br>Plaintiff,<br><br>v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY, JOSEPH STITZ, JR., JUAN GARCIA, CAROLINE S. HAYNES, GEORGE BROADBEND, PAUL CHRIST, JOHN DOES (#1-5) (fictitious designations) and JANE DOES (#1-5) (fictitious designations),<br><br>Defendants. | CIVIL ACTION NO. 07-4929 (GEB)<br><br>Honorable Garrett E. Brown, U.S.D.J.<br><br>Honorable Madeline Cox-Arleo, U.S.M.J. |

BRIEF IN SUPPORT OF PLAINTIFF'S
RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MICHAEL A. CASALE, ESQ.
ONE PASSAIC AVENUE
FAIRFIELD, NEW JERSEY  07004
(973) 882-6100
Attorney for Plaintiff

## TABLE OF CONTENTS

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . .   2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . .   5

    POINT I . . . . . . . . . . . . . . . . . . . . . .   5

        THERE ARE GENUINE ISSUES OF MATERIAL FACT IN
        EXISTENCE AND THUS, THE COURT SHOULD NOT ENTER
        SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS . .   5

        A.   The defendants lack probable cause in
            the filing of the Complaints against
            plaintiff . . . . . . . . . . . . . . . .   7

        B.   Plaintiff does not need to prove
            actual malice . . . . . . . . . . . . . .   12

        C.   Plaintiff was deprived of a liberty
            interest in relation to  the Hudson
            County charges . . . . . . . . . . . . .   13

        D.   Stitz and Garcia are not entitled to
            qualified immunity . . . . . . . . . . .   15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . .   20

i

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Albright v. Oliver, 510 U.S. 266 (1994)   . . . . . . . 13, 14

Gallo v. City of Philadelphia, 161 F. 3d. 217, 221
   (3rd. Cir. 1998) . . . . . . . . . . . . . . . . . . 14

Hunter v. Bryant, 502 U.S. 224 (1991)   . . . . . . . . 15

Johnson v. Knorr, 477 F. 3d. 75, 81 (3rd Circuit 2007)   . . 5

Merkle v. Upper Dublin School District, 211 F. 3d. 782,
   796 (3rd Cir. 2000)   . . . . . . . . . . . . 14, 17, 18

Thomas v. Kessler, 5 A. 2d. 187, 188 (PA 1939)   . . . . . 18

Wright v. City of Philadelphia, 409 F. 3d. 595, 602
   (3rd. Cir., 2005)   . . . . . . . . . . . . . . . . . 15


**STATE CASES**

Carollo vs. Super Markets General 251 N.J. Super. 264,
   270 (App. Div. 1991) . . . . . . . . . . . . . . . . 7

Earl v. Wynne, 14 N.J. 119, 134 (1953)   . . . . . . . . 12

Hammill v. Mack International Motors Truck Corp., 104
   N.J.L. 551, 553 (E&A 1928)   . . . . . . . . . . . 6, 12

Lind v. Schmid, 67 N.J. 255, 262-263 (1975)   . . . . . 7, 12

State v. Ippolito, 287 N.J. Super. 375, 378 (App.
   Div. 1996)   . . . . . . . . . . . . . . . . . . . 9, 10

Vickey v. Nessler, 230 N.J. Super. 141, 146, 147
   (App. Div.) cert. den. 117 N.J. 74 (1989)   . . . . . 5, 6

ii

**STATE STATUTES**

N.J.S.A. 2C:20-3    . . . . . . . . . . . . . . . . . . . 16

N.J.S.A. 2C:20-3(a)    . . . . . . . . . . . . 3, 4, 7, 10, 18


**OTHER**

Commentary: Final Report of the New Jersey Criminal
    Law Revision Commission, 221 (1971)    . . . . . . . .  9

## PROCEDURAL HISTORY

Plaintiff, Vincent Campanello, adopts the Procedural History sets forth in the movant's Brief.

## STATEMENT OF FACTS

In or about January, 1998, plaintiff, Vincent Campanello, was hired by General Research, a Division of Artenyro, Inc., a staffing company located in Teaneck, New Jersey. (SMF, Par. 4). Plaintiff was thereafter hired by the defendant, Port Authority of New York and New Jersey (hereinafter Port Authority). (SMF, Par. 5). Plaintiff was assigned to the tunnels, bridges and terminals (TB&T Division). (SMF, Par. 6).

During the course of his employment, plaintiff occasionally needed to get certain equipment, supplies and other personal property from the Port Authority stockroom. Some property was obtained before September 11, 2001, but most of it was acquired after that date.

Plaintiff testified that the property in question was utilized in taking Port Authority employees, including upper management, as well as dignitaries and other individuals who wished to visit the 911 site. He further stated that the bulk of those items were never returned to him, but instead were kept by those individuals. (CSMF, Par. 18). Because the stockroom personnel did not want to take back the unused property and because plaintiff didn't want to throw the property away, he retained it.

On or about January 18, 2005, plaintiff was interviewed by defendants, Joseph Stitz, Jr., and Juan Garcia, Detectives with

2

the Port Authority Police Department.  (SMF, Par. 8).  During the course of that interview, he provided Stitz and Garcia with a voluntary statement that was recorded.  (SMF, Par. 8).  During the course of that statement, the plaintiff advised Stitz and Garcia that he obtained the property from the stockroom through requisition forms and was told "don't bring it back".  (CSMF, Par. 10).  Plaintiff further testified in depositions that he was advised not to return any unused items to the stockroom and further was advised by Paul Iannacone, the stockroom supervisor, that there was "no procedure for the return of unused property."  (CSMF, Par. 17).  Over the course of several years, plaintiff retained this unused property and took it to his home where it was found after his consent  was given to a search of his house.

None of the property found at the plaintiff's home was acquired surreptitiously.  Instead, all property was acquired through the use of requisition forms, most of which were approved by Raymond Pagano, another contract employee working at Port Authority.  (CSMF, Par. 21).  Those requisition forms were given to the stockroom personnel and a computer generated form was issued stating what items were given to either plaintiff or Mr. Pagano.  (CSMF, Par. 19 & 20 - Exs. D and E to the Certification of Michael A. Casale submitted herewith).

When those items were found in plaintiff's residence, the Port Authority charged him with theft pursuant to N.J.S.A. 2C:20-

3

3(a).  Plaintiff was likewise charged with possession of stolen property, which charge was filed in Ocean County and was charged with theft of his laptop computer which was issued to him by Port Authority and found in his home.  That charge was filed in Essex County.

Plaintiff defended all three of these charges in three different counties and ultimately, all three charges were dismissed.  Plaintiff filed the within Complaint shortly after the last of those charges were dismissed (in Hudson County), however, he was time barred from proceeding on the malicious prosecution charges arising out of the Ocean County and Essex County charges due to the fact that more than one year had elapsed since those dismissals.

**LEGAL ARGUMENT**

**POINT I**

**THERE ARE GENUINE ISSUES OF MATERIAL FACT IN EXISTENCE AND THUS, THE COURT SHOULD NOT ENTER SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS.**

As set forth in the defendants' Brief, the elements of a cause of action for malicious prosecution are:

1. That the defendant initiated a criminal proceeding;

2. The criminal proceeding was terminated in plaintiff's favor;

3. The defendant initiated the proceeding without probable cause;

4. The defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

5. The plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F. 3d. 75, 81 (3rd Circuit 2007).

Defendants argue in their Brief that if there are no physical constraints present, the cause of action requires proof of a deprivation of liberty or "other special grievance". Citing Vickey v. Nessler, 230 N.J. Super. 141, 146 (App. Div.) cert. den. 117 N.J. 74 (1989). This reliance is misplaced. In Vickey, the defendant was charged with a motor vehicle offense which is recognized in the State of New Jersey as a "quasi-criminal offense" and thus, the Court therein required other

5

special grievances.  In fact, the Court pointed out in that case, that:

> In contrast in a typical criminal case a defendant is usually arrested and held to bail, fingerprinted, photographed and suffers all of the humiliation attendant to an arrest.  The arrest *alone* is sufficiently egregious without the need to show other special grievances.

230 N.J. Super. at 147.

It has long been the law in this State that the nature of the arrest and the term of deprivation of liberty is not an essential factor so long as the prosecution is a criminal prosecution.  As the Court said in Hammill v. Mack International Motors Truck Corp., 104 N.J.L. 551 (E&A 1928) "but in malicious prosecution cases, arrest is not an essential feature of the injury itself, if the prosecution be of a criminal nature."   Id. at 553.  There can be no question that the plaintiff herein was charged with a criminal offense, not a quasi-criminal offense, punishable either as a disorderly persons, 4th degree or 3rd degree offense, depending upon the value of the property alleged to be stolen.  There likewise can be no dispute that the plaintiff was arrested, fingerprinted, photographed and processed on the complaints filed in Jersey City before he was released on his own recognizance.  (Ex. D-1-E annexed to defendants' Brief).

Based upon those facts, the requisite degree of harm is demonstrated without the need to show any "other special

grievances".

## A.   The defendants lacked probable cause in the filing of the Complaints against plaintiff.

In <u>Lind v. Schmid</u>, 67 N.J. 255 (1975), the New Jersey Supreme Court stated that "the existence or non-existence of probable cause is a question of law."  Id. at 266.  The Court must determine whether or not there was a "state of facts such as to lead a person of ordinary prudence to believe on reasonable grounds the truth of the charge at the time it was made." <u>Carollo vs. Super Markets General</u> 251 N.J. Super. 264, 270 (App. Div. 1991), quoting <u>Lind</u>, <u>supra</u> 67 N.J. at 263.

The defendants' sole justification for bringing the charge of theft against plaintiff was the fact that he was in possession of property that was obtained from the stockroom at Port Authority.  There is no dispute, and in fact, plaintiff never disputed the fact that he obtained this property from the Port Authority stockroom.  Defendants fail to appreciate, however, the nature of the charge they filed against him.

<u>N.J.S.A.</u> 2C:20-3(a) provides:

> A person is guilty of theft if he <u>unlawfully</u> takes or exercises <u>unlawful</u> control over moveable property of another with purpose to deprive him thereof.

(Emphasis added).  At no time did the defendants ever determine whether or not plaintiff unlawfully appropriated these items.

7

From the very outset, plaintiff advised Stitz and Garcia that he was told by the stockroom clerks specifically not to return any unused items of merchandise.  As is evident from the testimony of both Stitz and Garcia, in fact, they never questioned the personnel who worked in the stockroom to determine whether or not that statement made by plaintiff was true.  Garcia had absolutely no recollection of talking to anyone and, in fact, if the Court peruses the investigative reports attached to defendants' submission as Exhibit D(1)(e), there is absolutely no reference to any interviews with the stockroom personnel.  The Answers to Interrogatories submitted by Port Authority likewise references no individuals who were interviewed to confirm or deny plaintiff's statement (Michael A. Casale Certification, Ex. A) and it is only retired Detective Stitz who now says that he did speak to some unnamed individual who he cannot even describe, who denied that any such statement was made.  Stitz can offer no explanation as to why there was no reference made in any investigative report concerning the interview with this mysterious stockroom person or as to why no statement was taken from the person at the time of the alleged interview.   (CSMF, Par. 11).

It is respectfully submitted that no such individual ever existed, that no interview of that individual was conducted by Detective Stitz and that he conveniently remembered this

interview solely for the purpose of defeating plaintiff's claims.

Likewise, neither Stitz nor Garcia did anything to determine whether or not there was a procedure adopted by Port Authority for the return of personal property to the stockroom.   (CSMF, Par. 10).   According to Mr. Campanello, he spoke to Paul Iannacone, the stockroom supervisor, and Mr. Iannacone advised him that there was no such procedure in place.   That statement goes unrefuted to date.  (CSMF, Par. 17).

These factors are important because as recognized by both Stitz and Garcia, whether or not plaintiff was in <u>lawful possession</u> of Port Authority property is crucial to filing a criminal charge against him.  It is well recognized in New Jersey that an honest claim of right to the property is an affirmative defense to a prosecution for theft.

    4.  *Claim of Right:*

       *        *        *

    *(c).*   To be guilty of theft, the actor must be aware that he is appropriating property and that it is a property of another, i.e., there must be a "conscious" misappropriation.  He is not a thief if he mistakenly supposes that the owner has consented. . .

<u>Commentary: Final Report of the New Jersey Criminal Law Revision Commission</u>, 221 (1971).

In <u>State v. Ippolito</u>, 287 N.J. Super. 375 (App. Div. 1996), the defendant was found guilty of violating <u>N.J.S.A.</u> 2C:20-3(a),

a fourth degree offense.   Defendant was found loading plywood into a co-defendant's van from a residential construction site. He had stated to the police that the co-defendant told him his "boss okayed him to take some lumber and move it."   Id. at 378. Defendant requested a "claim of right" charge which the Court failed to do.   The State opposed that argument and argued alternatively that a claim of right charge was only applicable where the defendant claimed actual ownership of the goods in question.

The Appellate Division disagreed and stated that a claim of right defense does not depend upon an allegation of ownership of property, merely an honest but incorrect belief that possession of the property is justified by permission of the actual owner.

In the case before the Court, in order to determine whether or not the plaintiff "unlawfully" took property from the stockroom, Stitz and Garcia could have simply interviewed each of the stockroom personnel to determine whether or not any of them had advised plaintiff not to return those items and could have checked to see whether there were any regulations, memos or other writings in place at the Port Authority that would govern the return of unused property.   Indeed, Stitz recognized the importance of this fact and acknowledged:

> Yeah, because this man said to us this is why he kept it, and if this was the truth, then somebody else dropped the ball.

10

(CSMF, Par. 12).

Stitz and Garcia failed to interview and document discussions with any stockroom personnel and failed to even check on the existence of regulations pertaining to the return of property received from the stockroom. They instead relied upon their belief that the simple possession of property that once belonged to the Port Authority was tantamount to theft.

It is respectfully submitted that the mere possession of another's property, without more, does not constitute theft and, in fact, does not constitute probable cause to file a charge of theft against an individual. Plaintiff's explanation to Stitz and Garcia has been consistent and is logical and supported by all of the evidence available in this case. He obtained the property from the stockroom using appropriate requisition forms, approved by Raymond Pagano. He used that property to take visitors out to the 911 site and was told by the stockroom personnel not to return any usused items. Plaintiff does not know whether any items were returned by the individuals he accompanied to the 911 site, but believes that all of those individuals simply kept whatever they were given to use. (CSMF, Par. 18). The remaining evidence set forth in the investigative report of Stitz and Garcia and based upon their testimony shows that Mr. Pagano likewise obtained property from the stockroom

which was not returned, however, they never determined how much he obtained nor what he did with it.  (CSMF, Par. 14).  Only plaintiff was charged with a crime based upon the skimpiest of investigations conducted by Stitz and Garcia.  Given their failure to follow-up on the basic elements of the crime they charged against the plaintiff, it is no wonder why they failed to prosecute any of the three criminal charges they filed against him and allowed those charges to be dismissed.

**B.   Plaintiff does not need to prove actual malice.**

The defendants also argue that the plaintiff cannot prove malice as required by the case law and thus, plaintiff's complaint should be dismissed.  It is true that malice is component of a charge of malicious prosecution.  Lind v. Schmid, 67 N.J. at 262-263.  As stated by the Court as far back as 1928, however, it is a "well-settled rule that malice may be inferred from want of probable cause".  Hammill v. Mack International Motors Truck Corp., 104 N.J.L. 551, 553 (E&A 1928).  The Supreme Court more recently stated in Earl v. Wynne, 14 N.J. 119, 134 (1953), "malice may be inferred from a lack of probable cause."

Although neither Stitz nor Garcia knew the plaintiff, they were faced with a situation where  personal property belonging to the Port Authority was found in the plaintiff's possession; where Caroline Haynes, a former employee of the Port Authority

had made complaints contained in letters and e-mails to her superiors about contract employees improperly obtaining property from the stockroom; where it appears that the stockroom personnel themselves were complicit in allowing property to be removed from the Port Authority premises and retained; and where others such as dignitaries, other Port Authority personnel, including management, and Raymond Pagano, had obtained and more importantly, retained property signed out of the stockroom. Faced with these facts, defendants' decided to make plaintiff an example for other employees and contract employees of Port Authority.  The plaintiff became a scapegoat for the mistakes of others.   There is, at the least, a genuine issue of material fact as to why Stitz and Garcia filed these charges without completing their investigation and knowing all of the facts. There is a legitimate question as to why they did not obtain the e-mails from Caroline Haynes and as to why they did not file charges against Raymond Pagano.   Their failure to act under circumstances that would compel a reasonable person to take additional steps, speaks to their motivation, and may indeed prove malice.

**C.**   **Plaintiff was deprived of a liberty interest in relation to the Hudson County charges.**

Defendants argue that under the Supreme Court's holding in Albright v. Oliver, 510 U.S. 266 (1994), a claim of malicious

13

prosecution brought under Section 1983 can only proceed if the plaintiff can establish a seizure or another Fourth Amendment Violation.  Defendants argue, therefore, that since the plaintiff was not held in custody, but was released on his own recognizance, that no such liberty interest deprivation can be proven and therefore, plaintiff's complaint should be dismissed.

Plaintiff relies partially on the case of Merkle v. Upper Dublin School District, 211 F. 3d.  782 (3rd Cir. 2000).  In Merkle, the Court noted the effect that Albright had on malicious prosecution claimed brought under Section 1983.  The Merkle Court noted that at least one case, Gallo v. City of Philadelphia, 161 F. 3d. 217, 221 (3rd. Cir. 1998), held that a plaintiff's liberty interest was affected by virtue of that party's travel restrictions and the requirement that he attend a number of court hearings over an eight and a half month period.  Although defendants emphasize the fact that plaintiff herein was not held in jail but was released on his own recognizance, they fail to acknowledge that plaintiff was indeed required to make a number of court appearances until the charges were finally dismissed against him in Jersey City on February 1, 2007.  Thus, for approximately two years, the plaintiff was required to defend the pending charges against him; he could not simply leave the jurisdiction and ignore those charges, but was, in fact, required to appear, and did, in fact, appear in Court on several occasions

14

until those charges were finally dismissed.  In <u>Gallo</u>, the Third Circuit has held such a constraint on liberty to be a sufficient depravation under Section 1983 to substantiate a claim of malicious prosecution.

### D.   <u>Stitz and Garcia are not entitled to qualified immunity.</u>

As pointed out in defendants' Brief, the concept of qualified immunity is inextricably linked to the existence of probable cause.  Police officers such as Stitz and Garcia are not entitled to absolute immunity, but only to qualified immunity so long as their actions were supported by the existence of probable cause.  <u>Hunter v. Bryant</u>, 502 U.S. 224 (1991).

> Whether any particular set of facts suggests that an arrest is justified by probable cause requires an examination of the elements of the crime at issue.

<u>Wright v. City of Philadelphia</u>, 409 F. 3d. 595, 602 (3rd. Cir., 2005).

Defendants argue that the actions of Stitz and Garcia were objectively reasonable, relying upon plaintiff's voluntary statement (Exhibit D-E) and the investigation report (Exhibit D-F).

A thorough review of those Exhibits, however, establishes but one component of the crime of theft.  Plaintiff readily admitted, and the investigating officers documented the fact that plaintiff was in possession of property that was formerly held

in the stockroom at Port Authority.   Defendants fail to acknowledge, however, the most important component of N.J.S.A. 2C:20-3, i.e., that a person is guilty of theft only if he "unlawfully takes or exercises control over movable property of another with purpose to deprive him thereof."  Simple possession of another's property does not constitute theft.  Neither Stitz nor Garcia, in their testimony, nor in their investigative reports, document any evidence that would support a finding that these items were "unlawfully" taken from the Port Authority stockroom.  In fact, the only evidence in either their testimony or the investigative reports shows just the opposite, i.e., that plaintiff stated that he obtained the property through the normal requisition process and that when he attempted to return property to the stockroom, he was told "to keep it."  That evidence negates any inference of unlawful taking and instead would lead a reasonable person to conclude that the taking was permissive.

Likewise, there is no evidence in any of their reports or testimony to indicate that plaintiff had a "purpose to deprive" the Port Authority of that property.  He kept it simply because the only other choice for him would have been to throw the property away.  Detective Stitz in his testimony acknowledged that this factor was important in that if it was true, it would have indicated that the plaintiff was not guilty of a crime but instead that  someone else "dropped the ball."   (CSMF, Par. 12).

16

Neither Stitz nor Garcia found any written regulations, procedures or other memoranda that would set forth the manner in which property was supposed to be returned to the stockroom after it had been assigned out.  It, therefore, had to be clear to them that the plaintiff was not violating any internal procedures that had been established by Port Authority.  Likewise, neither Stitz nor Garcia could identify a single individual at the stockroom who contradicted plaintiff's version of the facts, except for Stitz's belated recollection of speaking to someone at the stockroom whom he could not identify, name or even describe. Most importantly, no where in their investigative reports is any reference made to discussions with stockroom clerks which contradicted plaintiff's statements.

The facts in this case are similar to those presented to the Court in <u>Merkle v. Upper Dublin School District</u>, <u>supra</u>.  In <u>Merkle</u>, the plaintiff was charged with theft after she was found loading school supplies into the trunk of her car.  When confronted during the course of this act, she stated that she was going to donate those items to the North Hills Community Center. At the direction of a supervisor, she returned the items back to the school but was ultimately charged with theft.

On appeal, the Third Circuit reiterated the fact that "it has been repeatedly held that when one takes property under a claim of right, even though mistaken, larceny is not committed."

17

211 F. 3d. 782 at 796, citing <u>Thomas v. Kessler</u>, 5 A. 2d. 187, 188 (PA 1939).   As the Court determined in <u>Merkle</u>, the plaintiff's taking of the school property was done without "felonious intent":

> Indeed, she believed that as an art teacher, she had discretion to discard property she believed to be useless or give it to a non-profit institution that might possibly use it.  In other words, she believe she had the District's implied consent to dispose of the property under these circumstances and "that she had the right" to do what she did.

<u>Id</u>. at 796.

Simply put, theft under <u>N.J.S.A.</u> 2C:20-3(a) requires a felonious intent to deprive the owner of rightful possession of that property.  When it became clear to Stitz and Garcia that the plaintiff did not break into the Port Authority stockroom after hours, and surreptiously carry away the items that were found in his house; when they learned from plaintiff that he had submitted requisition forms to the stockroom to acquire the property; when Stitz and Garcia could not locate any internal memoranda or regulations pertaining to the methods by which any property was to be removed ; when their investigation did not include a single interview with any stockroom clerk disputing plaintiff's version of how he received the property or what he was told regarding returning any unused property; it should have become clear to each of them that the elements of the crime did not exist and that they had no probable cause to arrest him.  In the absence

of probable cause, there is no qualified immunity.

Plaintiff likewise had a legitimate belief that he did not have to return the property to the stockroom.   There were no internal regulations requiring him to do so.   Ray Pagano, who authorized plaintiff to get the items never directed him to return anything, and never returned anything himself.

The Port Authority personnel and dignitaries who plaintiff escorted to ground zero never returned anything to the stockroom. Everyone treated these items as "disposable".   Plaintiffs only mistake was not disposing of these items in the garbage instead of keeping them at his home.

Any fair assessment of these facts would lead one to conclude that no crime had been committed.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that defendants' Motion for Summary Judgment be denied.

Respectfully submitted,

Michael A. Casale

Dated:    August 3, 2010